# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ZIGMUND PAUL JENDRZEJEWSKI, | ) | |
|---|---|---|
| Plaintiff, | ) | CIVIL ACTION NO. 3:2008-69 |
| v. | ) | |
| JEFFREY WATSON, JOHN BROWN, JOHN LUTZ, AND JEFFREY MILLER, | ) | JUDGE GIBSON |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on the Defendants' Motion to Dismiss (Document No. 6). The Plaintiff is a Trooper with the Pennsylvania State Police (hereinafter "PSP") holding the rank of sergeant. The Defendants are Troopers with ranks superior to that of the Plaintiff who hold or held supervisory positions within the PSP. Pursuant to 28 U.S.C. § 1983, the Plaintiff alleges infringement of his First and Fourteenth Amendment rights as a result of the actions of the Defendants which he claims were made in retaliation for his unbiased and equal application of Pennsylvania law and regulations to employees of the PSP, particularly the reporting of regulatory violations of and a citation for speeding by PSP liquor enforcement officers. The Plaintiff did not suffer a demotion in rank, but was assigned to a different barracks and was eventually suspended from employment without compensation for ten days. Among the Plaintiff's claims is also a request for declaratory relief in regard to the constitutionality of this Court's mandatory alternative dispute resolution program for all civil actions as well as factual allegations that Defendant Miller committed various felonies to secret his own

violations of Pennsylvania law and an alleged illegal policy of the PSP prohibiting citation of PSP employees. The motion will be denied in part and granted in part.

The Plaintiff filed his original complaint (Document No. 1) on March 20, 2008. The First Amended Complaint (Document No. 3) (hereinafter "FAC") was filed on April 30, 2008. The Motion to Dismiss was filed June 30, 2008. The Court will address each of the Defendant's arguments in order of presentation.

The Court possesses subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) with venue being proper under 28 U.S.C. § 1391(b)(1).

## Count I of the First Amended Complaint

In Count I, the Plaintiff alleges violations of the First and Fourteenth Amendments to the Constitution. FAC, ¶¶ 36-42. Paragraph 37 of the FAC states in pertinent part that "[t]he Plaintiff made statements on matters of public concern by filing complaints and uttering speech concerning violations of department rules and regulations by other employees of the Pennsylvania State Police." The Plaintiff alleges that he suffered retaliation for citing a liquor enforcement officer[1] for speeding in December 2006 and making complaints against liquor enforcement officers "for violations of department regulations and the state vehicle code" in September 2005. FAC ¶¶ 9, 11, 38 The alleged retaliation took the form of an internal investigation by the PSP of the Plaintiff and the eventual issuance of a disciplinary action report. FAC ¶¶ 39-41. The allegations against the Plaintiff were that he targeted law enforcement, but the Plaintiff views this discipline retaliation for his uniform

---

[1]Such officers are law enforcement personnel employed by the Pennsylvania State Police through its Bureau of Liquor Control Enforcement and tasked with enforcing Pennsylvania's Liquor Code, found in Title 47, Pennsylvania Statutes.

2

application of the law toward all citizens, including law enforcement; the Plaintiff alleges Defendant Watson, his immediate superior, became angry with him soon after the issuance of the speeding citation. See FAC ¶¶ 13, 17. The Plaintiff also alleges that he was eventually transferred from his former assignment to the Hollidaysburg PSP barracks and made "supervisor of the staff unit and not allowed to conduct patrol activities." FAC ¶ 19. As a result, the Plaintiff alleges he was "constructively demoted in retaliation." FAC ¶ 6.

As part of the basis for his First Amendment claim, the Plaintiff is alleging that his speech in filing a claim against liquor enforcement officers and citing a liquor enforcement officer for speeding is protected speech as they were "matters of public concern." FAC ¶ 37. Viewing the FAC in the light most favorable to the Plaintiff, the Court does not agree.

In *Hill v. City of Scranton*, the Court of Appeals for the Third Circuit set forth its test for evaluating public employee First Amendment retaliation claims:

> We follow a well-established three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment. *See Baldassare v. State of New Jersey*, 250 F.3d 188, 195-96 (3d Cir.2001); *San Filippo v. Bongiovanni*, 30 F.3d 424, 430-31 (3d Cir.1994); *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). First, the employee must show that the activity is in fact protected. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Second, the employee must show that the protected activity "was a substantial factor in the alleged retaliatory action." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct. *Id.*

*Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)(overruled on other grounds as recognized in *Pollock v. City of Philadelphia*, C.A. No. 06-4089, 104 Fair. Empl. Prac. Cas. 569, 2008 WL 3457043, 2008 U.S.Dist. LEXIS 60764, (E.D.Pa. August 7, 2008)).

3

The Defendant cites *Garcetti v. Ceballos*, 547 U.S. 410 (2006) for the proposition that the Plaintiff's speech in the case *sub judice* is not protected and therefore, no violation of his First Amendment right to free speech occurred. *Garcetti* recognized the difficulty in drawing the line between protected speech and unprotected speech of employees because of the countless situations where employees' speech and the goals of the employers may conflict. *Id.* at 418. However, *Garcetti* established a threshold for the speech of public employees: "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. The FAC indicates that the Plaintiff's complaint in 2005 and the traffic citation in 2006 were made in furtherance of his duties as a PSP Trooper. Although the Plaintiff asserts that not all opinions expressed by public employees at work or opinions regarding employment subjects are without protection, he fails to recognize that *Garcetti* does not protect speech expressed in furtherance of a duty of his public employment, but it protects only matters of public concern. Plaintiff's Brief in Opposition (Document No. 11), p. 17; *Garcetti* at 418, 420-421. While the subject of alleged unequal application of the law by the PSP to its own members and employees would certainly be a subject of public concern in Pennsylvania, the Plaintiff's reporting of violations of law and regulations by PSP employees was in furtherance of his duty as a member of the PSP. There is no allegation that he uttered reports of these occurrences to the press or to the public outside of the PSP, rather, he uttered reports of these matters through a complaint within the PSP and by issuance of a traffic citation in accordance with his duty as a police officer. The Plaintiff alleges that he was not compelled to make these statements "as a matter of official duty", but nevertheless, he did make them

4

in furtherance of his role as a PSP Trooper, not as a concerned citizen conducting independent investigations of how the PSP disciplines violations of regulations and laws committed by its own employees. Thus, the Plaintiff has failed to sufficiently allege facts that establish a claim of violations to his right as a citizen to speak on matters of concern to the public when filing an internal PSP complaint against fellow police officers and issuing a traffic citation against a fellow police officer.

Another basis for his First Amendment claim is the allegation that the Plaintiff made objections regarding the initiation of an internal PSP investigation of him because he reported violations by other PSP employees. FAC ¶¶ 18, 20, 38. Reading the complaint in the light most favorable to the Plaintiff, the Plaintiff's oral complaints to Watson should be considered speech regarding a matter of public concern. These oral complaints indicate that the Plaintiff felt that any investigation of him was an act of retaliation because he abided by his duty to enforce the law against everyone equally, including fellow law enforcement. Such complaints to one's superior of retaliation by the superior certainly are speech of a public citizen, not of an employee who makes them in accordance with his duties. Had the Plaintiff addressed the matter formally along the chain of command, such a formal complaint of retaliation would appear to be within the scope of employment. Here, the Plaintiff objected to the initiation of an investigation and he did so with Watson who broached the subject of investigation. The Plaintiff's allegations suggest that the investigation was initiated because he reported violations of the law by employees of the PSP. Further objections farther along in the investigation process would also appear to be protected speech unrelated to fulfillment of duties as a PSP Trooper. The most similar opinion on this subject is set forth in *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-243 (3d Cir. 2006) where the Third Circuit concluded that a borough manager's complaint to borough council regarding

5

the harassing acts of the borough mayor is not protected speech under *Garcetti*, because it was his duty to make such reports. *Hill* at 242. However, the court also concluded that the manager's speech regarding a project he supported (but the mayor did not) was assumed at the pleading stage to be speech made "as a citizen" and thus protected against dismissal under Rule 12(b)(6). *Id.* The Court cannot conclude otherwise on the facts alleged in the FAC. Therefore, the motion is denied as to the Plaintiff's allegation of complaints to his superior officer and investigators regarding the alleged purpose behind the internal investigation of the Plaintiff.

Finally, Count I of the Plaintiff's Complaint sets forth an alleged violation of the Plaintiff's substantive due process rights: "The internal investigation conducted against the Plaintiff and the disciplinary action taken against him were a pretext that the Defendants used to retaliate against the Plaintiff for engaging in protected First and Fourteenth Amendment activity. *Plaintiff believes the outrageous and egregious misconduct of the defendants was so extreme that it constituted a violation of his substantive due process rights*." FAC, ¶ 41. Defendant cites the explicit source rule of *Albright v. Oliver*, 510 U.S. 266 (1994) arguing that the Plaintiff must rely on the specific provisions of an amendment, not substantive due process. Defendants' Brief, p. 11. Additionally, the Defendants argue that the Plaintiff is without any substantive due process claim because his continued employment as a public servant is not a "fundamental interest under the Constitution." *Id.* at p. 12. The Plaintiff is less than clear in the FAC as to where his substantive due process right is rooted in Count I. Further explanation is found in the Plaintiff's brief in opposition which makes the following reference: "Here plaintiff was given only two days (a blatant violation of his contract rights- which are property rights as a matter of law) to respond to the charges against him." The law in this circuit is established with

6

respect to property rights protected under substantive due process.

In *Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000), the Third Circuit recognized that while contract rights carry with them procedural due process rights, they do not establish substantive due process rights. Non-legislative, substantive due process rights are those rights that are "'fundamental' under the Constitution" and only one such right has been consistently found to be classified as such, that is ownership of real property. *Id.* at 142, 141. In *Nicholas*, the Plaintiff contended that tenured employment as a professor was a substantive due process right, but the Third Circuit disagreed:

> Nicholas's tenured public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution. We agree with the analysis of the District Court in Homar v. Gilbert that "it cannot be reasonably maintained that public employment is a property interest that is deeply rooted in the Nation's history and traditions." Nor does public employment approach the interests " 'implicit in the concept of ordered liberty like personal choice in matters of marriage and family.' " 63 F.Supp.2d at 576 (citation omitted); see also Collins, 503 U.S. at 128, 112 S.Ct. 1061 ("state law, rather than the Federal Constitution, governs the substance of the employment relationship"). Accordingly, we view public employment as more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process than to the venerable common-law rights of real property ownership implicated in DeBlasio.

*Nicholas v. Pennsylvania State University*, 227 F.3d 133, 143 (3d Cir. 2000)(footnote omitted). With such a precedent, the only reasonable analogy that can result from it is that being deprived of a contractually mandated third and final day to review an employment charge is not a deprivation of a substantive due process right. On this Fourteenth Amendment, substantive due process claim, the Defendants' motion is granted.

7

Finally, the Plaintiff is without a basis for another claim under the substantive component of due process. His explicit reference to his First Amendment right to report the crimes he observed as a "complaining witness" (Plaintiff's Brief, p. 21) appears to be a second basis for this substantive due process claim at this Court, but the Court has already addressed this issue and concluded no right exists in the Plaintiff's reporting of crime or regulatory violations while working as a PSP Trooper. Additionally, substantive due process right are rights that are fundamental and follow from the Fourteenth Amendment, not other express provisions of the Constitution. *See Albright, supra*; *see also Nicholas* at 143 n.3.

## Count II of the First Amended Complaint

The Plaintiff alleges violations of his right to procedural due process and equal protection of the law under the Fourteenth Amendment in this Count.

The basis of the procedural due process claim is a denial of "a fair hearing" because disciplining the Plaintiff was a foregone conclusion and his objections to the retaliatory investigatory process went unnoticed. FAC ¶ 46. It is further alleged that this "denial of a fair hearing" resulted in an equal protection clause violation against the Plaintiff because he was treated differently from other Troopers who are subject to the same investigatory process in other situations. The Plaintiff also includes in his claims that his due process rights are both procedural and substantive. FAC, p. 13; Plaintiff's Brief in Opposition, p. 21.

To establish a procedural due process violation, one's claim must establish that he possesses an interest that derives from the Fourteenth Amendment's "life, liberty, or property" clause and if such an interest exists, he must also establish that the procedures provided did not furnish due process to him.

8

*Hill v. Borough of Kutztown,* 455 F.3d 225, 233-234 (3d Cir. 2006); *Gikas v. Washington School District,* 328 F.3d 731, 737 (3d Cir. 2003).

> [T]he specific dictates of due process generally require[] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

Employee property rights are defined by the terms of their employment. *Dee v. Borough of Dunmore,* 549 F.3d 225, 230-231(3d Cir. 2008). The Plaintiff alleges that although a hearing was conducted pursuant to the PSP investigation of him, the resulting disciplinary action (abrupt transfer to another barracks and assignment and suspension with pay for ten days) was an act of retaliation. FAC ¶¶ 19-26, 42. The Court concludes that the terms of the collective bargaining agreement between the Commonwealth of Pennsylvania and the troopers it employs can be the basis for any procedural due process claim against the Defendants, including the failure to provide the Plaintiff three days in order to respond to the charges filed against him. Thus a viable claim is alleged under these circumstances. *See Dee, supra.* As for the sufficiency of the hearing process and its compliance with the CBA, the Court must view it in the light most favorable to the Plaintiff at this juncture and also allow it to proceed forward on the basis that it did not comply with the procedure set forth in the CBA.[2]

---

[2] The Court refrains from referencing the documentation of the internal investigation of the Plaintiff at this time in the absence of a copy of the CBA and other evidence regarding the nature of the proceedings which are characterized by the Plaintiff in his FAC and which the Court must accept as true for purposes of this motion. The CBA will more accurately depict what process is agreed upon by the parties rather than the Court relying upon the Defendants' conclusion that "the procedural due process requirements of notice an a hearing were amply satisfied prior to the imposition of discipline." Defendants' Brief, p. 15.

Nevertheless, if the Plaintiff's procedural due process claim is based upon a right to employment, the Court of Appeals for the Third Circuit has found and the Pennsylvania Code establishes that a veteran trooper, such as the Plaintiff, who has served more than the initial eighteen month probationary period, has a due process right to hearing prior to his removal from his employment. *Blanding v. Pennsylvania State Police*, 12 F.3d 1303, 1305-1307 (3d Cir. 1993)(citing 71 P.S. § 65). 71 P.S. § 65(also known as § 205 of the Pennsylvania Administrative Code) reads in pertinent part: "(e) No enlisted member of the Pennsylvania State Police shall be dismissed from service or reduced in rank except by action of a court martial board held upon the recommendation of the Commissioner of the Pennsylvania State Police and the Governor." The Plaintiff was never terminated or reduced in rank as the Defendants remind the Court. Defendants' Brief, pp. 13-14. Therefore, there is no basis for a procedural due process violation of the Plaintiff's rights as his rights under 71 P.S. § 65 were respected.

As for the Plaintiff's equal protection claim, it must be dismissed as a matter of law. The Defendants correctly cite to the recent Supreme Court case of *Engquist v. Oregon Dept. Of Agr.*, 128 S.Ct. 2146 (2008) which recognizes that there is no equal protection in the public employment context for a class of one individual, but that the equal protection clause applies to "groups of individuals". 128 S.Ct. at 2154-2155. Chief Justice Roberts speaks directly to the type of claim set forth by the Plaintiff: "But we have never found the Equal Protection Clause implicated in the specific circumstance where, as here, government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." 128 S.Ct. at 2155 (2008). The Plaintiff's equal protection claim is that the process of discipline set up in the CBA was essentially not followed when

10

it was applied to him because the supervisors applying it had already concluded that the Plaintiff was going to be disciplined prior to completing their investigation. The Plaintiff's equal protection claim set forth in Count II is therefore dismissed with prejudice.

**Personal Involvement of Miller and Brown**

Defendants Miller and Brown argue that they are not alleged to have had personal involvement in the disciplining of the Plaintiff and therefore cannot be held liable under any § 1983 claim. Defendant's Brief, pp. 18-20. However, the Plaintiff alleges personal involvement through two bases, the enforcement of a policy by Miller and Brown regarding how PSP troopers are to enforce the law against other troopers as opposed to the public generally (FAC ¶ 27, 35) and also that Miller and Brown "reviewed and ratified the misconduct of Lutz and Watson" in the manner in which they disciplined the Plaintiff. FAC, ¶ ¶ 22, 35. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete,* , 845 F.2d 1195, 1207 (3d Cir. 1988). The alleged review and approval by Miller and Brown of the Plaintiff's discipline is sufficiently particular to permit the allegations against Brown and Miller to proceed at this stage. Furthermore, the allegations that Brown and Miller oversaw a policy within the PSP regarding the enforcement of laws by troopers against fellow troopers is another basis on which Brown and Miller can be held personally liable under § 1983. *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004)( "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.' *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)"). The Plaintiff's allegations

11

are sufficient at this stage to withstand the Defendants' arguments on this issue.

**Motion to Strike**

Turning to the Defendants' Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f), the Court will grant this motion. First, matters pertaining to the traffic stop of Deputy Commissioner Coleman J. McDonough and Commissioner Miller will be stricken from the FAC as immaterial to the Plaintiff pleading his claims against the Defendants. The allegations made in paragraphs 28 through 34 are immaterial in that they are not essential to the Plaintiff pleading his claims, but they certainly are fodder for fact discovery in this matter to the extent they are relevant evidence of the Plaintiff's allegations of unlawful policies within the PSP. *See* Charles Alan Wright & Arthur R. Miller, 5C Federal Practice and Procedure § 1382 (3d ed. 2004). However, such information belongs within the confines of discovery, a motion for summary judgment and possibly the jury trial in this matter, but not within the allegations of the Plaintiff's complaint.

The Court also strikes footnote one of the FAC as it is scandalous matter in that it alleges an unpublished opinion of the Court of Appeals for the Third Circuit sanctioned what the Plaintiff refers to "as the 'Nazi' or 'Hitler' rule in the PSP": all PSP employees comply with the will of the Commissioner of the PSP, including the refraining from citing or arresting other PSP employees or else suffer retaliation from the PSP. Not only is this matter outrageous as it applies to the Defendants as PSP supervisors, but it is outrageous as it alleges the Court of Appeals sanctions such actions. These scandalous matters are properly stricken from the FAC. *See* Wright and Miller, *supra*. Additionally, the allegations of destruction of evidence against Miller and McDonough are also stricken as scandalous in that they are false; the Court has viewed the video of the traffic stop that was allegedly destroyed.

12

Finally, the phrase "committing felonious misconduct to protect himself from scrutiny and criminal investigation while" in paragraph 35 of the FAC is stricken on the motion of the Court inasmuch as it relates to the matters preceding it that have also been stricken.

**Count III of the First Amended Complaint**

The Plaintiff alleges that the mandatory alternative dispute resolution in effect in this court is "unconstitutional as written and as applied" because of the additional cost to plaintiffs associated with engaging in this mandatory process as well as the unwillingness of the PSP leadership to negotiate with Plaintiff's counsel. FAC, pp. 16-18. While the Defendants are correct the Declaratory Relief Act, 28 U.S.C. §§ 2201-2202, provides the remedy for the Plaintiff who seeks a declaration of his rights, the law that the Plaintiff's claim appears to be based upon is the Seventh Amendment right to a jury trial. It would also appear to the Court that the necessary parties to be named would be those judges of this Court who approved the ADR policy of this district and possibly the ADR coordinator who executes the policy.[3] None of these procedural steps or substantive allegations have been taken or made by the Plaintiff and therefore, the controversy is not properly before this Court in this civil action. More importantly, despite his allegations, the Plaintiff has subsequently waived this claim as he engaged in early neutral evaluation/mediation before Magistrate Judge Keith Pesto in accordance with the ADR program on December 11, 2008.

Therefore, the Court will dismiss without prejudice the request for declaratory relief at Count III of the FAC.

---

[3] When properly before this Court, this matter most likely will require recusal of the entire board of judges and the assignment of an independent jurist by the Court of Appeals to review this matter.

**AND NOW**, this 24th day of March, 2009, in accordance with the foregoing Memorandum opinion, IT IS HEREBY ORDERED THAT the Defendants' Motion to Dismiss (Document No. 6) IS GRANTED IN PART WITH PREJUDICE and DENIED IN PART as to Counts I and II as more fully stated in the Memorandum Opinion.

IT IS FURTHER ORDERED THAT the Defendants' Motion to Dismiss is GRANTED as to Count III as the Plaintiff has not properly presented his claim for declaratory relief in the Amended Complaint and has otherwise waived said claim by participating in the ADR process in this matter.

IT IS FURTHER ORDERED THAT the motion to strike included within the Defendants' Motion to Dismiss is GRANTED as more fully stated in the Memorandum Opinion.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**